ORDERED.

Dated: August 22, 2024

_____
Jason A. Burgess
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

IN RE:

JOHNATHAN L. DETLEFS,   Case No. 3:23-bk-01710-BAJ

Debtor.   Chapter 7

_____/

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Case came before the Court on May 22, 2024 on the *Motion to Dismiss Chapter 7 Case for Cause Pursuant to 11 U.S.C. § 707(a)* (the "Motion") (Doc. 9), filed by Randall Shulin (the "Creditor"), and the *Response in Opposition to the Motion* (Doc. 24), filed by the Debtor. Upon the evidence and the applicable law, the Court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

On July 24, 2023, the Debtor filed a voluntary Chapter 7 bankruptcy petition. (Doc. 1). The Debtor is not married, nor does he have children. Although the Debtor graduated from college in 1996, he has never maintained a steady job or income stream and describes himself as being "self-employed."[1] At the trial, the Debtor testified that he earned no meaningful income for the

---

[1] The Debtor described the nature of his self-employment as putting business deals together.

1

past *fifteen* years and does not recall the last time he filed a tax return. The Debtor's monthly income on Schedule I is listed as $215, and his monthly expenses on Schedule J are listed as $500. The Debtor's sole income of $215 is from government assistance, and his remaining living expenses are subsidized directly by his parents.[2] The Debtor resides in a townhome that is owned by a living trust established by his parents. (Cr.'s Ex. 30). Upon the sale of the townhome, the proceeds are to be split in equal thirds between the Debtor and his two brothers.[3]

On his schedules, the Debtor did not list any legal or equitable interest in real property and valued his personal property at $1,431.37. (Doc. 1, pg. 9). The Debtor disclosed the existence of his parents' trust and described his interest as follows, "Debtor is [the] contingent beneficiary of Debtor's parents' trust. Debtor will not receive anything from [the] trust until both parents are deceased." (Doc. 1, pg. 14). The sole "deposits of money" listed by the Debtor on his schedules include checking accounts with balances of $36.63 and $74.74 and a savings account with a balance of $45.00. (Doc. 1, p. 13). Debtor's Schedule E/F lists nonpriority unsecured claims in the amount of $1,353,496.50. (Doc. 1, pg. 24). The Creditor's claim accounts for $1,320,000 of the unsecured debt. (Doc. 1, pg. 23). The Debtor's remaining unsecured claims of $33,496.50 are primarily comprised of medical bills and credit card debt. (Doc. 1, pp. 19 – 24).

On February 5, 2024, the Chapter 7 Trustee filed a Report of No Distribution, in which the Trustee *certified* that he "made a diligent inquiry into the financial affairs of the debtor[] and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law."[4]

---

[2] Notably, the Debtor testified that his parents do not give him cash but assist him by paying certain expenses directly.

[3] The Debtor also testified that because the trust is a "living trust" his parents could write him out of the trust at any point in time if they wished to do so.

[4] The panel of Chapter 7 Trustees who serve the Jacksonville Division are seasoned trustees who take their statutory responsibilities of fully administering bankruptcy estates very seriously. The Court is confident that a thorough

2

Ann Detlefs, the Debtor's mother, is a financial advisor who runs the family's financial planning business. Mrs. Detlefs candidly testified that the Debtor is not licensed, qualified, or capable of working at the family's business. Mrs. Detlefs stated that to her knowledge the Debtor has *never* been involved in a successful business deal. She also echoed the Debtor's testimony with respect to his living situation. Specifically, Mrs. Detlefs testified that all expenses related to the townhome are paid by her husband, and that in exchange for allowing their son to reside at the property, they expect him to keep the home and the boat properly maintained.[5]

Over eight years before the petition date, the Debtor entered into a "Promissory Note" (the "Contract") with the Creditor. (Cr.'s Ex. 28). The terms of the Contract provided that the Creditor would pay IMG Capital Partners ("IMG"), d/b/a Detlefs, $100,000, in exchange for IMG paying the Creditor $1,000,000 within a year of the Contract, on February 27, 2016. (Cr.'s Exs. 28-29). The Debtor's business deal, however, never materialized, and the Debtor defaulted on the Contract. In response to the default, the Creditor filed a lawsuit for breach of contract against the Debtor on June 23, 2020, in the Fourth Judicial Circuit in and for Duval County (the "State Court Action").[6] The Debtor, who was not assisted by counsel in the State Court Action, filed a *pro se* response to the complaint. (D.'s Ex. 2). The Creditor subsequently filed a Motion for Summary Judgment that went unanswered by the Debtor. On October 27, 2020, a Summary Final Judgment (the "Judgment") in the amount of $1,320,000 was entered in the State Court Action against the Debtor. (Cr.'s Ex. 1). The Debtor did not appeal the Judgment.

---

investigation into the Debtor's estate was conducted by the Trustee. The Court also notes that because the Trustee filed a "no asset" report, claims were not required to be filed in the Case.

[5] Mrs. Detlefs estimates the townhome's value to be approximately $900,000, and that the boat slip is worth between $60,000 to $70,000.

[6] The case number assigned to the State Court Action is 16-2020-CA-003581. (D.'s Ex. 1).

Following the entry of the Judgment, the Creditor never received any payment from the Debtor. In response, the Creditor began various post-judgment collection actions against the Debtor in February of 2023, which included serving a Request for Production and scheduling the Debtor and his parents for depositions in July of 2023.[7] (Cr.'s Exs. 4-6, 8-9,11). Soon thereafter, the Debtor filed his petition for relief under Chapter 7. (Cr.'s Ex. 19). In response to the filing of the Debtor's bankruptcy case, the Creditor filed the instant Motion alleging that the case is a classic example of bad faith and should be dismissed.

## Conclusions of Law

Pursuant to 11 U.S.C. § 707(a), it is within the discretion of the court to dismiss a Chapter 7 case for cause after notice and a hearing. United States v. McDaniel (In re McDaniel), 363 B.R. 239, 243 (M.D. Fla. 2007). In McDaniel, the court concluded that bad faith could constitute cause for dismissing a Chapter 7 case, and that the movant seeking a bad faith dismissal bears the burden of proof. Id. at 244.

As recognized by the Eleventh Circuit, bad faith is a fact-intensive determination that "'is subject to judicial discretion under the circumstances of each case'" and "does not lend itself to a strict formula." Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza), 719 F.3d 1253, 1271 (11th Cir. 2013) (quoting Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.), 749 F.2d 670, 674 (11th Cir.1984)). In Piazza, the Eleventh Circuit determined that "a totality-of-the-circumstances approach is the correct legal standard for determining bad faith under § 707(a)" and focused on "'atypical' conduct . . . that falls short of the 'honest and forthright invocation of the Bankruptcy Code's protections . . . .'" Id. (internal citation omitted). Courts must "examine whether a debtor's intentional acts or omissions to act 'constitute a misuse or abuse of

---

[7] Neither the Debtor nor his parents appeared for the scheduled depositions. (Cr.'s Exs. 10, 12).

4

the provisions, purpose, or spirit of the Bankruptcy Code.'" In re Merkel, 595 B.R. 608, 611-12 (Bankr. S.D. Fla. 2018) (quoting Piazza, 719 F.3d at 1272). "A bankruptcy court, as a trier of fact, must carefully examine the conduct of the debtor and identify facts and bases which support a finding of bad faith under § 707(a)." Id. at 612. Importantly, because the determination is left to the court's discretion, "the court should step cautiously when asked to exercise the power to deny a debtor access to its jurisdiction." In re Kane & Kane, 406 B.R. 163, 170 (Bankr. S.D. Fla. 2009) (citing In re Zick, 931 F.2d 1124, 1129 (6th Cir. 1991) (dismissal of Chapter 7 cases for lack of good faith limited to egregious circumstances)).

The Creditor argues that the following reasons are evidence the Debtor filed the Case in bad faith: (i) the case is essentially a two-party dispute that was filed for the purpose of the Debtor evading the Judgment in the State Court Action, (ii) the Debtor's petition misrepresented his financial resources, and (iii) the Debtor filed the Case for an improper purpose that conflicts with the spirit and purpose of the Bankruptcy Code.

The Creditor's first argument that the Debtor's "ability to pay all other creditors prior to the Petition Date" indicates that he "had sufficient resources to pay at least a portion of the Final Judgment" and that his failure to do so is reflective of bad faith is an *inaccurate* portrayal of the Debtor's dismal financial situation. Notably, the *sole* income the Debtor has is the approximately $215 in monthly government assistance, which surely does not stretch far in today's age of inflation.

In addition to the Creditor's Judgment, the Debtor also listed medical and credit card[8] debts of over $33,000 on his schedules. The Debtor testified that this additional unsecured debt

---

[8] Prior to the bankruptcy filing, the Debtor testified that his parents would directly make the minimum payment due on his credit cards.

contributed to his decision to file for bankruptcy. Further, even assuming, without deciding, that the Debtor filed this Case to avoid paying the Judgment, the Court would still not find the existence of bad faith. Similar to a case recently decided in this district, the Debtor's "resort to Chapter 7 is strategic, but not unfair in the circumstances." In re English, 653 B.R. 916, 922 (Bankr. M.D. Fla. 2023) (finding that a 71 year old debtor, receiving social security, who owned no real estate and possessed no retirements savings, did not exercise bad faith in filing for Chapter 7 to avoid paying a deficiency judgment); see also In re Merkel, 595 B.R. at 614 (collecting cases) (recognizing that filing for protection under the bankruptcy code "to counter the collection efforts of one creditor, without further indicia of bad faith, is not sufficient to warrant dismissal under § 707(a))." The evidence in this case clearly reflects that the Debtor, a middle-aged man, has never succeeded in gaining financial independence from his parents, and his primary means of survival are the subsidies his parents graciously provide him. This includes the townhome he resides in, associated living expenses, and necessities. Upon consideration of the facts, the Debtor's real-life circumstances clearly do not warrant the dismissal of his Chapter 7 case for bad faith.

Next, the Court considers the Creditor's argument that the Debtor misrepresented his financial resources on his bankruptcy petition. Although the Court understands the Creditor's perspective, the argument fails.[9] To a certain extent, the Debtor enjoys certain "luxuries" in life, such as an upscale townhome and the use and enjoyment of his father's boat. Viewing the Debtor's situation from the opposite end of the spectrum, though, showcases a vastly different narrative of a middle-aged man, who possesses no financial independence, is unemployed, receives monthly government assistance of $215, has a disastrous track record in past business dealings, and does

---

[9] The Court commends the Creditor's attorneys for being very well prepared and making well-reasoned and thoughtful arguments.

not own a vehicle. The Creditor's position that the Debtor somehow "controls" property owned by his parents is speculative and unsupported by the evidence. The Debtor is simply fortunate enough to have parents who allow him to live rent free. Additionally, the Debtor's testimony reflects that since graduating from college almost three decades ago, he has never had steady employment and has suffered a long succession of failed business dealings. Based on the Debtor's dismal employment history, the Court cannot find that the Debtor's lack of current employment is indicative of bad faith.

The Creditor's final argument that the Debtor's petition in bankruptcy is at odds with the "principal purpose of the Bankruptcy Code [] to grant a 'fresh start' to the 'honest but unfortunate debtor,'" is also not supported by the evidence. Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007) (quoting Grogan v. Garner, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)) (internal quotations omitted). Importantly, "[a] fresh start is facilitated by allowing a debtor to discharge all dischargeable debts while retaining assets that are exempt." In re Uche, 555 B.R. 57, 62 (Bankr. M.D. Fla. 2016). As Judge Jackson aptly stated in Uche, "where a debtor has insufficient funds to meet his obligations, this is an obvious reason to file a Chapter 7 petition." Id., see also In re Bushyhead, 525 B.R. 136, 149 (Bankr. N.D. Okla. 2015), aff'd, No. 15-CV-89-JED-PJC, 2017 WL 1549467 (N.D. Okla. Apr. 28, 2017) (recognizing that "[a]lmost every bankruptcy case is filed because a creditor is pursuing a debtor, whether it be calls from debt collectors, repossessions, suits on unsecured debt, or residential foreclosures."). The Debtor in this case is clearly an honest but unfortunate debtor. Based on the evidence and testimony presented, the Debtor has suffered *repeated* failures of business ventures

he has been involved in over the decades.[10] Debtor's failed business venture with the Creditor is unfortunately yet another of Debtor's failed business deals. Additionally, despite the Creditor's argument to the contrary, the Debtor is not able to meet his basic living expenses. Debtor's parents' choice to allow their adult son to reside in their townhome rent free, directly purchase basic necessities, and pay the minimum sum due on certain credit cards is a family matter.[11] The evidence does not show that the Debtor is receiving "income" from his parents. Further, the Debtor's schedules reflect various other creditors who are collectively owed over $33,000, whom the Debtor is unable to pay. Although the Creditor's claim of $1,320,000 dwarfs the other unsecured claims, the Debtor's remaining unsecured debt is not a small sum, especially given the Debtor's virtually non-existent government subsidized monthly income of $215. These considerations all weigh in favor of a finding that the Debtor has insufficient funds to pay his creditors and is indeed an honest but unfortunate debtor.

## Conclusion

The Debtor's petition is a quintessential Chapter 7 case, and if "filing bankruptcy to avoid the payment of a debt was cause for dismissal, no debtor would ever be able file a bankruptcy case." In re Uche, 555 B.R. at 62. While the Creditor takes issue with the Debtor living rent free in an upscale townhome owned by his parents, it is not the Court's role to sit in "judgment" on the Debtor's virtually nonexistent employment history, and his continued dependence, well into adulthood, on his parents. For the reasons discussed, the Court finds that the Debtor's petition

---

[10] The Debtor's mother testified that she has no knowledge of him ever being involved in a successful business venture that has made a profit.

[11] The Debtor's parents are certainly under no legal obligation to provide a roof over his head or directly pay for certain essentials and could cease doing so at any moment.

under Chapter 7 was *not* filed in bad faith.  The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.